24-1605 Mr. Spadola, I see you have reserved two minutes for rebuttal when you are ready. I want you to give the students a minute to clear the courtrooms so we can...  All right. When you are ready, counsel, you may proceed. May it please the Court, Joseph Spadola for the New York State Attorney. I'll lean into the microphone. The Attorney General did not violate plaintiffs' free speech rights, much less their clearly established free speech rights, in sending a letter warning them of the potential for racially motivated violence at their upcoming event and asking them to take steps to prevent that violence and other unlawful conduct. Nowhere in the letter did the Attorney General ask or demand that plaintiffs cancel their event or curtail their speech. On the contrary, the letter assumed as a given that the event would move forward. Okay. But shouldn't we wait for Voolo and see whether there is qualified immunity in Voolo? Because if there is qualified immunity in Voolo, there surely is qualified immunity here, and that settles the Federal side of this case. I agree that if there is qualified immunity in Voolo, then there is also qualified immunity here. And if the Court wants to wait for the Voolo decision to reach the easiest possible outcome, we wouldn't object to that. But we think that independent of the outcome in Voolo, there should be qualified immunity here. So, counsel, both aspects of this appeal are interlocutory, right, this appeal. Yes. So we have the qualified immunity appeal and we have an absolute privilege appeal. Correct. Absolute privilege, setting that aside, why do we have jurisdiction over the qualified immunity appeal? It doesn't look to me like you're stipulating to the plaintiff's version of the facts here. We are stipulating to the plaintiff's version of the facts. But I said that. But there are disputes here about what was the meaning of these statements, right, and how would they be perceived. How do we have jurisdiction to review this if it's not on an undisputed set of facts? We accept the plaintiff's allegations, which really boil down to the letter that the Attorney General sent. But if you accept that, then on the merits, I think you have to say that it is covered by what the Supreme Court said in Voolo. And, therefore, the only issue before us is qualified immunity, which may or may not come through after Voolo. As to the absolute privilege, I don't know what the heck New York law is on that because it's a terrible mess. But it would seem to me, if it was with us, I would certify, but I certify anything. But in this case, we could perfectly well, if we found qualified immunity, there would be no federal issue. So we dismiss that without prejudice and let that go to State court where it belongs anyway. Yes. I agree that that would be a plausible outcome here. I would, again, push back on the notion that this case would fall with the Voolo case. I think if there's qualified immunity in Voolo, then there is here as well. But the inverse is not true because there's a critical difference between what is alleged in Voolo and what is alleged here. And I'm talking about the allegations in the complaint, not any factual disputes. What's the difference? In Voolo, there was an express allegation that the defendant official made a quid pro quo where she said, essentially, to the insurance companies that she regulated, if you agree to cut ties with the NRA and thus weaken their ability to deliver their message, I will agree not to pursue you for. But wasn't there here a claim of an intent to threaten that is the issue that the Supreme Court found that if you intended to threaten and to violate the First Amendment, that that was enough? And isn't that sufficiently claimed that it may or may not be true, but at an interlocutory appeal, we have to find that that is so? But there are no allegations to support that intent in this case, unlike in Voolo. Well, it doesn't matter if there are no allegations. If that has been said and you accept all the facts, we still have to do it. I mean, you could argue below that that wasn't so. Well, the Court doesn't have to accept conclusory allegations, even in a qualified immunity appeal. The Court only accepts well-pleaded allegations. So the core question here really is whether this letter can be perceived as threatening to shut down the event, intimidate and harass the plaintiffs, and forcing an obvious attempt to coerce them into shutting down the event and an effort to intimidate and harass them. That's one way of reading the letter. Another way of reading the letter is to say the Attorney General is letting these folks know these are the authorities I have, an investigation will be undertaken. If I feel that's appropriate, I'm giving you the heads up, which might well be a perfectly appropriate way of action to take. But that's a dispute. So we would have to find that there's no way to read the letter as intimidating or harassing in order to find that there's no factual dispute to be resolved for qualified immunity, or even if we were to accept those allegations as true, that a reasonable reader could read this as intimidating them and coercing them into abandoning their First Amendment rights, we could still find as a matter of law that she was entitled to qualified immunity? Yes, because at the second step of the qualified immunity inquiry, the question is whether a reasonable official sending this letter could have understood that it did not convey a threat to suppress speech, but rather conveyed exactly what it said on its face, which is to take preventive measures to avoid violence. If a reasonable official could understand the letter in that way, then qualified immunity attaches. And, in fact, at page 10 of their brief in the district court, the plaintiffs admitted that that interpretation of the letter is a reasonable one. That alone entitles the Attorney General to qualified immunity. Given that a reasonable official could understand this letter to convey the exact message that it conveys on its face, qualified immunity is appropriate. And I would also emphasize that there are no factual disputes here, as there were in Voolo, because the only action alleged by Attorney General is the issuance of this letter. The Court has the letter before it. There's an implication in the complaint that the Attorney General published the letter. I don't know that the complaint actually says it, but what are your thoughts on that? It does not. Does it matter if the Attorney General publishes it to a third party or whether she just sends it to the plaintiffs? That would be relevant to the defamation claim, Your Honor. I don't think it has any relevance to the First Amendment claim, because the question for the First Amendment claim is, was it a threat to suppress speech? And whether she published it or not is not really relevant to that question. It's rather what the letter says on its face. So another related question is, assuming it was a threat to suppress speech, it doesn't appear that it worked, because the event went forward without a hitch. Do you need to prove harm to prevail on a coercion claim or retaliation claim? Is that part of the element of the cause of action? It's not a necessary element, but it's an important factor. And, in fact, every case in which courts have found coercion, the allegedly coerced party acquiesced in the government's demand to suppress speech, in every single case, including Voolo. In this case, the plaintiffs acknowledged that they went forward with their — Is there a consensual claim for attempted coercion? There could be a case where there's — a person is — has extraordinary firmness and moves forward with the event even in the face of a threat, and that might violate the First Amendment. But there has been no such case so far. And so that would — the Court would be breaking new ground in reaching that conclusion. And here, the other factors undermine — Would there be enough for qualified immunity? That — This is breaking new ground on this? Yes. That would be enough for qualified — and that's an independent basis for qualified immunity. Yeah, it would be an independent basis. Because there is no case addressing a situation where a government official calls for measures to prevent violence. We could perfectly well say that it is enough, even if they go along, but that that wasn't established at the time of this case. Correct. That's correct. And — Thank you. And there's — well, I see I'm over my time, so I'll save the rest of my time for rebuttal. Thank you. Thank you, counsel. We'll hear from Ms. Lindsey. Good morning, Your Honor. May it please the Court. The Attorney General used her office to threaten and to coerce citizens of this country and citizens of New York State to quiet their speech. She — Did those threats and coercion work? To a certain degree, Your Honor, yes, because the plaintiffs had to put in place additional measures to ensure — But until the Supreme Court ruled in Volo, does anybody know that where you were doing something perhaps to threaten, but also which had a law-abiding side to it, that that was okay? After Volo, we know that the threat is enough at its extreme, but wasn't that established just in Volo, and isn't that enough for qualified immunity here? Not that I think, Your Honor. I don't believe so. Why? What was settled before Volo? I mean, after all, the lower court in Volo first gave judgment for the Attorney General, and the Supreme Court reversed. Now, isn't that enough to say the thing was unsettled until the Supreme Court reversed? That's one way of looking at it, Your Honor. Yeah, it is. But I have to say here that the Attorney General, qualified immunity cannot apply here. It does not apply to her because her statements and her letter was published with actual malice. That's defamation, right? That's the next step. The defamation issue is a state issue, isn't it? Yes, it is. So if we find qualified immunity on the federal First Amendment issue, we only have a state issue left and a difficult state issue because the state of New York is every which way an absolute privilege, so shouldn't we just dismiss that without prejudice and let that you can sue in state court and see what they tell you? Your Honor, but until that's completely settled and until we have an idea as to where that's going to go, I would But why should we decide a difficult state issue unless there is also a federal issue which you can attach it to? Because there is a federal issue here. There's a First Amendment issue that's over there. Unless there's qualified immunity. But she has not – qualified immunity has not been established here. And it hasn't been established for a number of reasons. So where's the clearly established right that A.G. James violated here, right? Because that's clearly established as one of the thresholds for qualified immunity. So in order for her to not have qualified immunity, she has to have violated a clearly established right. So what is that and where was it clearly established? A.G. James' letter is not protected by under the government speech doctrine, and that's what she's going to try to claim. And so there was a First Amendment violation. Is there any case where a law enforcement official sent a letter like this to someone saying be careful about holding this event? I mean, you've said bad things in the past. We'll include that. And we're concerned about violence. Is there such a case? Your Honor, even if there was, that would not be applicable here because the – But if there isn't such a case, then it goes to qualified immunity. Well, in Gauch, the Supreme Court held that there was – that there was – the speech was protected. Is there a case that holds that where a law enforcement official sends a letter, a threatening letter such as this, to someone warning about, you know, don't engage in violence, that that somehow is a First Amendment violation? Is there such a case? Not that I'm standing here, Your Honor, that I can recall. If that is so, then don't we have qualified immunity. But let me ask you, suppose the Vullo panel says that there's qualified immunity in Vullo. Doesn't that mean a fortiori that there's qualified immunity here? Now, that's got precedent over us. I'm not on that panel. I believe Judge Shin is. I believe the facts in Vullo are different than the facts here. I understand. But aren't the facts such that if Vullo had qualified immunity, then a fortiori here, that is, that this case is weaker on your side than Vullo? Vullo is a pretty strong case your way, as the Supreme Court said. Yes, Your Honor. But here there was no investigation going on. The Attorney General published statements without there being a – You said the Attorney General published statements. Does the complaint allege that the Attorney General published the statements other than sending it to the plaintiffs themselves? Other than sending it to the plaintiffs themselves, and I believe it was sent to the press as well, but that is why discovery is necessary. Does the complaint allege that the Attorney General sent the letter to the press? It alleges that the letter was published, yes, Your Honor. It was? You're using – It was published to the press, yes, Your Honor. Does it allege that the Attorney General published it to the press? That her office did. Where in the complaint does it say that? I don't believe – actually, I don't believe it says exactly that the Attorney General sent it to the press, but it does say that she published, that it was published. Where does it say that she published it to anyone other than the plaintiffs? I believe she – it says that she published it to the other community leaders, the other legislators in the area. Where in the complaint – Your Honor, I don't have – I do not have the complaint before me. You're saying the complaint explicitly says that she published the letter to other community leaders. It infers, Your Honor, but it also states, I believe, that – Does it say it or does it imply it? It implies it, Your Honor. Okay. The Attorney General puts in something and says we should take judicial notice of it. I'm not sure that we should, but the document suggests that Clark himself posted the letter. That was after it was already published, Your Honor. That was after – When was it first published? It was, I believe, a few days after – I believe it was a few days or that evening after the letter had already been published out. Does the complaint say that? Yes, Your Honor. Okay. Good. Thank you. That is it. Thank you. Thank you, counsel. We'll hear Mr. Stidall. We'll hear from you with two minutes of rebuttal. On the issue of publication, the complaint has no allegation as to when or how the Attorney General published the letter. But it does say she published the letter. It says that she published an official letter without – It says she knowingly published multiple false statements to multiple media outlets. Right. Without specifying what those statements were, assuming we can infer she meant the letter, then that would be an implication that she published the letter, but without specifying when or how. And so to the extent – the only aspect of the First Amendment claim that this is relevant to is the retaliation claim, the harm component of the retaliation claim, whether the Attorney General caused harm. But the plaintiffs don't dispute our threshold argument that when the only adverse action taken is government speech, unless the speech is coercive, there can be no retaliation claim. Counsel, do you want to give us a little bit on the other issue, the absolute privilege issue? Yes. Just for a couple minutes. Yes. So the – that privilege under settled New York law applies to statements that are made during the performance of an official's duties and that relate to the official's duties. And the plaintiff's own claim emphasizes that the Attorney General issued this letter in her official capacity as the Attorney General on official letterhead and that she invoked her authority under the civil rights law to investigate discriminatory conduct and racial – It's sort of catch-22 for them in that either if it's coercive, it's because she's acting as the Attorney General, but then on the other account, they have to concede she's acting as the Attorney General. That's exactly right, Your Honor. Their – the presentation of their First Amendment claim undermines their defamation claim as far as absolute privilege because it demonstrates that – But why, if it is a matter of State law, should we decide that? Because the law is clear enough. I take Your Honor's point that there are – The problem is that State cases are fairly strong in saying what is in the scope of employment is fairly broad and that would cover it. But then there are all these statements that say absolute privilege is a very dangerous doctrine and we should almost never have it. And I don't know, you know, what to make of that. Right. But once the Court accepts the premise, which is undisputed, that the Attorney General was performing her official duties in sending this letter, the Court of Appeals has made very clear that the absolute privilege attaches regardless of the motive of the defendant official. And so it's not a factual inquiry. The only factual question is were these statements made during the performance of an official duty, and that's not disputed here. How does that tie into qualifying immunity, if at all? Assuming she's performing official duties, she's absolutely immune, does that impact the qualifying immunity defense? It doesn't, Your Honor. That's only relevant to the absolute privilege. Okay. Thank you. Okay. Unless the Court has further questions, we would urge the Court to reverse as to both claims or at minimum to reverse as to the First Amendment claim and dismiss without prejudice as to the defamation claims. All right. Thank you, both of you. Thank you. Thank you for your arguments.